UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN JOHNSON, individually and as Administrator of the Estate of NORMAN JOHNSON, deceased, | )<br>)<br>) Case No. 16 C 144 |
| Plaintiff, | )<br>) Judge John W. Darrah<br>) |
| v. | ) Magistrate Judge Susan Cox<br>) |
| Cook County Sheriff THOMAS DART, in his Official Capacity, Lt. NAVARETTE, Lt. TUCKER, Sgt. BIALI, Officer LAKESHA PALOMINO, Officer WALTER LEWIS, Officer PERCY KIRWOOD, Officer STAR # 5737, Officer MANADE, Officer STAR # 2120, STEVEN BLAZINA, COOK COUNTY, Nurse UVEEDA CADE, Paramedic ROSARIO, Paramedic HORNER, SUNITA B. WILLIAMSON, M.D., KIM BLACKSTONE, RN, MARKITHA BOLDEN, LPN, ANDREW J. CROWLEY, CHAD J. ZAWITZ, M.D., KYUNG W. YOO, M.D., KENYA D. KEY, PSYD, VENTSISLAVA VALCHANSKI, OLUFEMI AJALA, and LATONYA HARRIS, | )<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

Plaintiff, MARILYN JOHNSON, individually and as Administrator of the Estate of NORMAN JOHNSON, deceased, by and through her attorneys, Irene K. Dymkar and James L. Bowers, and complaining against defendants, Cook County Sheriff THOMAS DART, in his Official Capacity, Lt. NAVARETTE, Lt. TUCKER, Sgt. BIALI, Officer LAKESHA PALOMINO, Officer WALTER LEWIS, Officer PERCY KIRWOOD, Officer

1

STAR # 5737, Officer MANADE, Officer STAR # 2120, STEVEN BLAZINA, COOK COUNTY, Nurse UVEEDA CADE, Paramedic ROSARIO, Paramedic HORNER, SUNITA B. WILLIAMSON, M.D., KIM BLACKSTONE, RN, MARKITHA BOLDEN, LPN, ANDREW J. CROWLEY, CHAD J. ZAWITZ, M.D., KYUNG W. YOO, M.D., KENYA D. KEY, PSYD, VENTSISLAVA VALCHANSKI, OLUFEMI AJALA, and LATONYA HARRIS, states as follows:

## NATURE OF CLAIM

1. This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 (42 U.S.C. §1983), to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law. Specifically here, defendants deprived plaintiff of plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

2. Additionally, plaintiff relies upon the Court's supplemental jurisdiction to assert the Illinois state claim of indemnification.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331, and 1367.

4. Venue is founded in this judicial district upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**PARTIES**

5. Plaintiff's Decedent, Norman Johnson, died at the age of sixty-three (63) on January 7, 2014, while incarcerated as a pretrial detainee in the Cook County Department of Corrections in Chicago, Illinois. Prior to his death, Norman Johnson was a citizen of the United States and resided within the jurisdiction of this court.

6. At all times herein mentioned, Plaintiff Marilyn Johnson was the lawful spouse of Norman Johnson, deceased, was and now is a citizen of the United States, and resides within the jurisdiction of this Court.

7. On January 5, 2016, by order of the Circuit Court of Cook County, Marilyn Johnson was lawfully appointed a Representative of the Estate of Norman Johnson, deceased.

8. At all times herein mentioned, Defendant Cook County Sheriff Thomas Dart ("Dart"), was elected Sheriff of Cook County, and was responsible for the operations, policies, and management of the Cook County Department of Corrections, including but not limited to the hiring and training of all personnel employed by the Cook County Department of Corrections and the safety and security of all inmates detained at said facility, also known as the Cook County Jail. Dart is being sued in his official capacity.

9. At all times herein mentioned, Defendant Cook County was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, Cook County owned and financed the Cook County Department of Corrections facility commonly known as the Cook County Jail, located at 2700 S. California Avenue, Chicago, Illinois, and operated Cermak Health Services, located at 2800 S. California Avenue,

Chicago, Illinois, as a subdivision of Cook County that provides medical services to detainees.

10. At all times herein mentioned, Defendants Lt. Navarette, Lt. Tucker, Sgt. Biali, Officer Lakesha Palomino, Officer Walter Lewis, Officer Percy Kirkwood, Officer Star # 5737, Officer Manade, Officer Star # 2120, and Steven Blazina were each employed by the Cook County Department of Corrections and were each acting under the color of law and within the scope of their employment by the Cook County Department of Corrections. These Defendants are each being sued in their individual/personal capacity.

11. At all times mentioned herein, Defendants Nurse Uveeda Cade, Paramedic Rosario, Paramedic Horner, Sunita B. Williamson, M.D., Kim Blackstone, RN, Markitha Bolden, LPN, Andrew J. Crowley, Chad J. Zawitz, M.D., Kyung W. Yoo, M.D., Kenya D. Key, PSYD, Ventsislava Valchanski, Olufemi Ajala, and Latonya Harris were each an employee or agent of Cermak Health Services or of Cook County and were each acting under color of law and within the scope of their employment. These Defendants are each being sued in their individual/personal capacity.

**FACTUAL ALLEGATIONS**

12. On January 3, 2014, Norman Johnson was arrested by a police officer employed by the Chicago Police Department and charged with possession of .2 gram of a controlled substance, with a street value of $10.00.

13. On January 4, 2014, Cook County Judge Laura Marie Sullivan issued an order that Norman Johnson be released on a Recognizance Bond with Electronic Monitoring, or, in

the event he did not meet the Sheriff's Electronic Monitoring criteria, until he had posted ten percent of his bond, which was set at $10,000.

14. The Sheriff's Electronic Monitoring program was instituted for the purpose of relieving the historical overcrowding at Cook County Jail by releasing inmates charged with minor crimes back into their communities, where they could take care of their own needs better than through the thinly spread resources often unavailable at Cook County Jail.

15. Persons charged with crimes in Cook County who are unable to make bond may be detained in Cook County Jail while awaiting trial. Upon admission, detainees are screened for medical needs and housing location within the jail.

16. Pretrial detainees at Cook County Jail have not been convicted of the crime for which they are being incarcerated. However, they are not free to make health care choices for themselves.

17. On January 4, 2014, subsequent to issuance of the aforesaid court order, Norman Johnson was transported to Cook County Jail for processing and detention prior to his pretrial release.

18. On January 4, 2014, during the booking process at Cook County Jail, Booking Officer Steven Blazina, Officer Manade (Star # 9427), and Officer Star # 2120, participated in the decision that Norman Johnson would not be released on his own recognizance, despite the Court order.

19. On January 5, 2014, Norman Johnson underwent intake medical screening by Cook County Cermak Health Service employees.

20. During the intake medical screening process, Norman Johnson provided a history of having been enrolled in a daily methadone treatment program for nine years, that his last dose of methadone had been administered two days previously, and that he was experiencing symptoms of methadone withdrawal.

21. The intake medical screening process was conducted by a Cermak Health Service team consisting of Andrew Crowley, Sunita B. Williamson, M.D., Kim Blackstone, R.N., Markitha Bolden, LPN, Chad J. Zawitz, M.D., Kyung W. Yoo, M.D., KenyaD. Key, PSYD, Ventsislava Valchanski, Latonya Harris, and Olufemi Ajala.

22. As a result of the medical history provided by Norman Johnson during the intake medical screening process, as well as his medical examination during that process, each of the members of the screening team identified in the preceding paragraph knew or should have known that, without continuation of his methadone treatment regimen, Norman Johnson was at high risk of cardiac arrest, respiratory depression and/or death due to the effects of abrupt methadone withdrawal.

23. At no time was any medication or other treatment provided to Norman Johnson to prevent the serious health risks presented by abrupt methadone withdrawal.

24. All members of the intake medical screening team identified above were deliberately indifferent to Norman Johnson's need for treatment to prevent the serious health risks presented by abrupt methadone withdrawal.

25. On January 5, 2014, as a result of the intake medical screening process, Norman Johnson was assigned housing in Division 2, Dorm 1 of the Cook County Department of Corrections.

26. Division 2, Dorm 1, at Cook County Jail, also known as "D-House," is a direct supervision housing location where inmates with special medical or other needs are intended to be under constant visual surveillance by correctional officers assigned to that location.

27. During the next two days, while incarcerated in D-House, Norman Johnson, was observed at various times by correctional officers assigned to that location to be lethargic, difficult to arouse, suffering from stroke-like symptoms, and complaining of "dope-sickness," such that all correctional and medical staff on duty were or reasonably should have been aware of the need of Norman Johnson for close supervision.

28. On January 7, 2014, two Cook County Jail Officer Lakesha Palomino (Star # 8967) and Officer Star # 5737, and three Cook County Jail supervisors, Lt. Navarette, Lt. Tucker, and Sgt. Biali, were on duty and responsible for the safety and security of all inmates housed in Division 2, Dorm 1, including Norman Johnson, by assuring that said inmates were under constant and direct supervision.

29. At approximately 10:00 a.m. on January 7, 2014, the individual defendants identified in the preceding paragraph left the inmates housed in Division 2, Dorm 1 completely unattended for a period of time.

30. During the aforesaid period of inattention, at approximately 10:09 a.m. on January 7, 2014, Norman Johnson was discovered by Cook County Jail Officer Walter

Lewis, Jr. (Star # 4373) to be having a seizure and presenting with a faint pulse and agonal respiration.

31. At approximately 10:10 a.m. on January 7, 2014, Cermak Health Services Nurse Uveeda Cade, was notified that inmate Norman Johnson was in need of immediate medical attention and that her medical assistance was needed.

32. Despite the obvious severity of Norman Johnson's medical condition, Nurse Uveeda Cade made the decision that no cardiopulmonary resuscitation (CPR) or other medical attention would be provided to Norman Johnson prior to the arrival of paramedics twenty-five minutes later, at 10:35 a.m.

33. During the aforesaid twenty-five minute period, at least seven correctional officers, including Lt. Navarette, Lt. Tucker, Sgt. Biala, Officer Percy Kirkwood (Star # 7414), Officer Palomino, Officer Lewis, and Officer Star # 5737, were aware of and/or present to observe the severity of Norman Johnson's condition, yet none of them made any attempt to initiate CPR during that time period or to contact 911.

34. At 10:35 a.m., twenty-five minutes after notification of a heart-related medical emergency, supervising correctional officers Lt. Navarette and Lt. Tucker first brought an Automated External Defibrillator (AED) to the bedside of Norman Johnson. At that point, the AED was no longer useful in any attempt to restore a normal heartbeat.

35. Despite being notified of the need for emergency medical assistance prior to 10:28 a.m., Cermak Health Services Paramedics Rosario and Horner also did not arrive at

D-House until 10:35 a.m., at which time CPR was finally begun, 911 was notified, and, at 11:05 a.m., Norman Johnson was loaded into an ambulance for transportation to St. Anthony Hospital.

36. At St. Anthony Hospital, Norman Johnson was declared dead on arrival at the emergency room at 11:20 a.m. as a result of cardiac arrest. At autopsy, the cause of death was later also determined to be related to methadone toxicity.

37. According to the National Commission on Correctional Health Care, sudden cardiac arrest is a survivable event, dependent upon the immediacy of the response to inmate complaints. A victim's chance of surviving a cardiac arrest drops by ten percent for every minute that a normal heartbeat is not restored through use of CPR and/or use of an AED.

38. On January 7, 2014, employees of Cook County Department of Corrections and Cermak Health Services failed to respond in a timely manner to life-threatening conditions to Plaintiff's Decedent Johnson, as set forth above.

39. By reason of the above-described acts and omissions of Defendants, Plaintiff's Decedent sustained injuries, humiliation, and indignities; suffered great physical, mental, and emotional pain and suffering; and ultimately died, all to his and Plaintiff Marilyn Johnson's damages in an amount to be ascertained at trial.

40. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

41. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute, and render legal assistance to her in the within action so that she might vindicate the loss and impairment of her rights. By reason thereof, Plaintiff requests payment by Defendants, and each of them, of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, or any other provision set by law.

## COUNT I

### VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL CONDITION

42. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

43. As alleged above, Defendants knew or should have known that Plaintiff's Decedent Johnson was in serious need of medical care, yet Defendants were deliberately indifferent to Plaintiff's Decedent's serious medical needs, despite the feasibility of providing prompt and adequate treatment for Plaintiff's Decedent's serious medical needs.

44. By reason of the conduct of Defendants, Plaintiff's Decedent suffered both temporary and permanent physical and emotional injuries and death, as set forth more fully above, and was thereby deprived of rights, privileges and immunities secured to him by the Fourteenth Amendment to the Constitution of the United States.

45. The aforementioned actions of the named individual Defendants were the direct and proximate cause of the constitutional violations set forth above.

## COUNT II

## *MONELL* CLAIM AGAINST COOK COUNTY SHERIFF DART

46. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

47. At all times material to this Complaint, there existed at Cook County Jail the following practices, policies, and customs attributable to the Office of the Sheriff of Cook County:

   a) Failure to provide pretrial detainees suffering from acute and life-threatening medical conditions with the level of medical care and attention required;

   b) Failure to provide pretrial detainees suffering from acute and life-threatening medical conditions with appropriate housing where emergency medical needs could be met;

   c) Failure to implement an adequate system for collection, distribution and diagnosis of medical care complaints and symptoms;

   d) Failure to train employees in the recognition and handling of emergency medical situations;

   e) Permitting overcrowding conditions in the prison to adversely affect the quality of health care administered to pretrial detainees;

   f) Failure to train all employees in and/or require immediate use of CPR techniques where necessary;

   g) Failure to have AED devices readily available for use in medical emergencies; and

   h) Failure to adopt an adequate program to evaluate pretrial detainees with serious medical conditions for eligibility for early release from custody while awaiting trial.

        i)        Failure to implement a program for continuation or initiation of methadone treatment for detainees at risk of serious health consequences due to abrupt withdrawal from opiates.

48. The actions of the individual Defendant officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies, and customs of Dart, the Office of the Cook County Sheriff, the Cook County Department of Corrections, the Cook County Jail, and its employees.

49. The actions of the individual Defendant officers as alleged in this Complaint, and the actions of the Sheriff of Cook County and his supervisory employees in failing to train, supervise, and discipline employees with respect to said actions, involved recurring situations at the Cook County Jail and not isolated instances of failure to act.

50. The practices, policies, and customs described above were widespread, permanent, and well-settled, and were known, or should have been known, to the municipal policy-makers of the Sheriff of Cook County.

51. The municipal policy-makers of the Sheriff of Cook County acted with deliberate indifference to the rights of Plaintiff in maintaining, overlooking, and preserving the unconstitutional practices, policies, and customs delineated above.

52. By their inaction and failure to correct the above-described practices, policies, and customs, municipal policy-makers tacitly approved and thus indirectly authorized the type of misconduct Plaintiff complains of herein.

53. The practices, policies, and customs described above caused the violation of Plaintiff's Fourteenth Amendment rights, as alleged in this Complaint.

## COUNT III

### *MONELL* CLAIM AGAINST COOK COUNTY

54. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

55. At all times material to this Complaint, there existed at Cermak Health Serices the following practices, policies, and customs attributable to Cook County:

- a) Failure to provide pretrial detainees suffering from acute and life-threatening medical conditions with the level of medical care and attention required;

- b) Failure to provide pretrial detainees suffering from acute and life-threatening medical conditions with appropriate housing where emergency medical needs could be met;

- c) Failure to implement an adequate system for collection, distribution and diagnosis of medical care complaints and symptoms;

- d) Failure to train employees in the recognition and handling of emergency medical situations;

- e) Failure to provide pretrial detainees with timely access to health care;

- f) Failure to implement a program for medical assessment of the level of medical care required by pretrial detainees that takes into consideration staffing levels and capabilities and prison population numbers;

- g) Failure to train all employees in and/or require immediate use of CPR techniques where necessary; and

- h) Failure to have AED devices readily available for use in medical emergencies.

          i)       Failure to implement a program for continuation or initiation of methadone treatment for detainees at risk of serious health consequences due to abrupt withdrawal from opiates.

56. The actions of the individual employees and agents of Cermak Health Services as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies, and customs of Cermak Health Services, the Cook County Bureau of Health Services, and Cook County.

57. The actions of the individual employees and agents of Cermak Health Services as alleged in this Complaint, and the actions of Cermak Health Services and its supervisory employees in failing to train, supervise, and discipline employees with respect to said actions, involved recurring situations at Cermak Health Services and not isolated instances of failure to act.

58. The practices, policies, and customs described above were widespread, permanent, and well-settled, and were known, or should have been known, to the municipal policy-makers of Cook County.

59. The municipal policy-makers of Cook County acted with deliberate indifference to the rights of Plaintiff in maintaining, overlooking, and preserving the unconstitutional practices, policies, and customs delineated above.

60. By their inaction and failure to correct the above-described practices, policies, and customs, municipal policy-makers tacitly approved and thus indirectly authorized the type of misconduct Plaintiff complains of herein.

61. The practices, policies, and customs described above caused the violation of Plaintiff's Fourteenth Amendment rights, as alleged in this Complaint.

## COUNT IV

## SUPPLEMENTAL STATE CLAIM FOR INDEMNIFICATION BY COOK COUNTY

62. Plaintiff hereby incorporates and realleges paragraphs one (1) through sixty-one (61) hereat as though fully set forth at this place.

63. Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/4-6003, and 55 ILCS 5/5-1106, Cook County is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer, such as the Cook County Sheriff and its deputies, acting within the scope of his/her employment, is found liable.

64. The acts and/or omissions of all Defendants were committed within the scope of their employment.

65. In the event that a judgment for compensatory damages is entered against any Defendants, Cook County must pay the judgment as well as the associated attorneys' fees and costs.

WHEREFORE, plaintiff Marilyn Johnson, as Administrator of the Estate of Norman Johnson, by and through her attorneys, Irene K. Dymkar and James L. Bowers, requests that this Court:

    1. Enter judgment against Cook County and Dart, in his official capacity, and each of the individual Defendants;

2. Award Plaintiff compensatory damages, as determined at trial;

3. Award Plaintiff punitive damages, as determined at trial;

4. Award Plaintiff attorneys' fees and costs;

5. Order Cook County to indemnify the individual Defendants for any judgment entered in this case arising from the actions of said Defendants;

6. Award such other and additional relief that this Honorable Court deems just and equitable.

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**


Dated: January 7, 2016

                                                    /s Irene K. Dymkar
                                                    Irene K. Dymkar

Plaintiff's attorneys:

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 W. Jackson Blvd., Suite 562
Chicago, IL 60604-3420
(312) 345-0123

James L. Bowers
631 N. Central Avenue
Chicago, IL 60644
(312) 343-6326