UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 cv 144 |
| | ) | |
| v. | ) | |
| | ) | District Judge Robert W. Gettleman |
| THOMAS DART, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is a death action that arises under the Civil Rights Act of 1871 (42 U.S.C. §1983). This case, filed by Marilyn Johnson on behalf of the estate of Norman Johnson, generally alleges that Norman Johnson died at Cook County Jail on or about January 7, 2014, as a result of not receiving methadone treatment, and the related withdrawal symptoms.

In the course of discovery, Plaintiff requested any and all "Mortality Review documents or other death investigation" documents from the Cook County Defendants (*aka* "The Medical Defendants") (known as "Defendants" for purposes of the instant motion) [dkt. 115, p. 2]. Defendants acknowledge that there is a Mortality Review, but contend that they should not be compelled to produce it because it is privileged pursuant to the Illinois Medical Studies Act, 735 ILCS 8/8-2101. Defendants filed a Motion for a Protective Order to this effect [dkt. 115] as requested by the Court after the discovery hearing of February 21, 2018 [dkt. 108]. The Court ordered Plaintiff to file a response brief, specifically addressing, *inter alia*, the particular factual circumstances that would demonstrate a "particularized need" or "compelling necessity" for the Mortality Review [dkt. 118]. The Court has also ordered an *in camera* inspection of the Mortality Report and has conducted the same[1] [dkt. 122]. The Court is now ready to rule on Defendants' Motion for a Protective Order [dkt. 115].

---
[1] The Mortality Review document appears to be called "The Joint Commission Root Cause Analysis", but the Parties have been using the less-cumbersome title of Mortality Review, which the Court will continue to employ.

1

The Illinois Medical Studies Act provides in pertinent part:

> All information, interviews, reports, statements, memoranda or other data of…allied medical societies…used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges….

735 ILCS § 5/8-2101. The Act further provides that such information "shall not be…discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS § 5/8-2102. The Illinois Supreme Court has held that legitimate accreditation associations are "allied medical societies" under the Illinois Medical Studies Act.[2] *See Niven v. Siqueira*, 109 Ill.2d 357, 94 Ill.Dec. 60, 487 N.E.2d 937, 942-43 (Ill.1985).

The Illinois Medical Studies Act creates a state law claim of privilege (commonly known as the peer review privilege). On the other hand, "Federal Rule of Civil Procedure 26(b)(1) provides that parties may discover any matter not privileged which is relevant to the subject matter involved in the pending action. In cases based upon a federal cause of action, the federal common law governs issues of privilege, even where the complaint states pendant state law claims." *Estate of Belbachir v. Cty. of McHenry*, 2007 WL 2128341, at *5 (N.D. Ill. July 25, 2007) (citing Fed.R.Evid. 501; *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981)). Therefore, because this matter is based on a federal cause of action,[3] the court must look to federal common law, interpreted in the light of reason and experience, to determine whether a privilege exists. *See* Fed.R.Evid. 501; *Accreditation Ass'n for Ambulatory Health Care, Inc. v. United States*, 2004 WL 783106, at *1 (N.D. Ill. Jan. 8, 2004).

The Seventh Circuit has relied on two principles in determining whether to apply a state privilege in a federal question case:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby

---

[2] Plaintiff does not argue that Defendants do not qualify as an "allied medical society" under the statute and therefore the Court does not reach this issue.

[3] Plaintiff's operative Complaint does contain a state law claim, over which we have retained supplemental jurisdiction in the interests of judicial economy.

2

> block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second…it is important to take into account the particular factual circumstances of the case in which the issue arises…[by] weigh[ing] the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

*Shadur*, 664 F.2d at 1061-62 (citing *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir. 1977)). "Under the criteria announced in *Shadur*, we first look to the need for truth." *United States v. State of Ill.*, 148 F.R.D. 587, 588 (N.D. Ill. 1993). As is common, the burden of establishing the privilege falls on the party asserting the privilege. *See Warren v. Sheriff of Cook Cnty. Thomas Dart*, 2013 WL 5835771, at *3 (N.D. Ill. Oct. 30, 2013).

The purpose of the Illinois Medical Studies Act is "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach v. Springfield Clinic*, 157 Ill.2d 29, 191 Ill.Dec. 1, 623 N.E.2d 246, 251 (Ill.1993). This policy is a substantial one. *See Shadur*, 664 F.2d at 1062. However, "federal courts have declined to recognize a state evidentiary privilege when doing so would impose a substantial cost to federal substantive and procedural policy, particularly when a plaintiff would be precluded from pursuing his federal claims." *Dobbey*, 2014 WL 1364428, at *2 (citing *Univ. of Penn. v. EEOC*, 493 U.S. 182, 193, 202 (1990)).

It is important to note that the Illinois Medical Studies Act was never intended to shield medical providers from potential liability, nor does it protect all information used for internal quality control purposes. *Belbachir*, 2007 WL 2128341, at *5 (citing *Webb v. Mount Sinai Hosp. & Med. Ctr. of Chicago, Inc.*, 347 Ill. App. 3d 817, 825 (2004)). In fact, Plaintiff cites many compelling cases where courts have found the Illinois Medical Studies Act privilege (or a similar state law medical privilege) inapplicable and ordered production of information related to post-death investigations. *See e.g.*, *Belbachir*, 2007 WL 2128341; *Agster v. Maricopa Cnty.*, 422 F.3d 836 (9th Cir. 2005); *Virmani v. Novant Health Inc.*, 259 F.3d 284 (4th Cir. 2001); *Lewis v. Henry Cnty.*, 2006 WL 1843336 (S.D. Ind. June 29, 2006); *Weiss v. Chester*

3

*Cnty.*, 231 F.R.D. 202 (E.D. Pa. 2005); *Leon v. San Diego Cnty.*, 202 F.R.D. 631 (S.D. Ca. 2001).

Here, the Court is persuaded by Plaintiff's argument that unique considerations dramatically weaken the case for recognizing the privilege in a post-death investigation ordered by a jail. *See Jenkins v. DeKalb Cnty, Georgia*, 242 F.R.D. 652, 660 (N.D. Ga. 2007). "Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered." *Agster*, 422 F.3d at 839. Therefore, "[a] review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context." *Jenkins*, 242 F.R.D. at 660. Compared to a civilian mortality review, a mortality review of a deceased inmate is likely to contain far more "nonmedical" information such as whether and when jail officials notified medical officials of a particular problem, whether there was a reason for nonmedical officials to have monitored a situation more closely, and perhaps provide insight into jail customs or policies. *Id.* "In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided." *Agster*, 422 F.3d at 839.

In additional to the above considerations related to mortality reviews conducted after inmate deaths, with respect to Norman Johnson in particular, it does not appear Plaintiff can obtain the information she seeks regarding the medical care (or lack thereof) provided to Norman Johnson from other sources such as the medical records over which Defendants do not assert a claim of privilege. *See Accreditation Ass'n for Ambulatory Health Care*, 2004 WL 783106, at *2. Specifically, Plaintiff has told the Court that "it remains unclear whether any evidence exists that prescriptions for methadone withdrawal symptoms were filled and delivered for Norman Johnson." [dkt. 119, p. 4]. After an *in camera* review of the Mortality Report at issue in the instant matter, it appears that the Review offers what is likely the most cohesive timeline of events that Plaintiff could likely hope to receive in this matter. It also speaks directly to medications and interventions given, or not given, to Norman Johnson. The information in the Mortality Review is important, if not critical, to Plaintiff's case, which contains Counts for deliberate indifference of a serious medical need in violation of Plaintiff's Fourteenth Amendment

4

Rights; *Monell* claims against the Sheriff and Cook County for failures to train, supervise, and discipline employees with respect to emergency medical situations; and a state claim for indemnification [Second Amended Complaint, dkt. 60].

The very existence of The Joint Commission quality assurance review committee, and its evaluations and recommendations contained in the Mortality Review, are important in deciding the ultimate issue in the case – whether the Defendants were providing adequate medical care to inmates, including Norman Johnson. *United States v. State of Ill.*, 148 F.R.D. at 588. "Adequate medical care is not only measured by remedial steps after injury but also by evaluation and affirmative steps taken by quality assurance committees." *Id.* In this case, the Court, while recognizing the importance of the policy sought to be furthered by the peer review privilege, concludes that the Mortality Review is certainly relevant to Plaintiff's federal claims enumerated above. The fact that the Mortality Report is of more than marginal probative value to the issues presented in this case, coupled with the relatively scant contemporaneous documentation in this case, leads the Court to conclude that the interest in disclosure outweighs the policy interests at issue here.

Therefore, Defendants' Motion for a Protective Order [dkt. 115] is denied. Defendants are ordered to produce a copy of the Mortality Report to Plaintiff by 4/6/2018. Use and distribution of the Mortality Report shall be governed by the Confidential Matter Order entered by the Court on July 24, 2017 [dkt. 84], and Defendants shall mark the Report as "CONFIDENTIAL–SUBJECT TO PROTECTIVE ORDER" per the terms of that Order.

This matter is set for status on May 1, 2018 at 9:30 a.m.

Entered: April 3, 2018

_____

U.S. Magistrate Judge, Susan E. Cox