IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARILYN JOHNSON, individually and as an Administrator of the Estate of NORMAN JOHNSON, deceased, | ) ) ) ) |
| Plaintiff, | ) Case No. 16 C 0144 ) |
| v. | ) ) Judge Robert W. Gettleman |
| Cook County Sheriff THOMAS DART in his official capacity, SUNITA WILLIAMSON, M.D., MARKITHA BOLDEN, LPN, KENYA KEY, PsyD, VENTSISLAVA VALCHANSKI, OLUFEMI AJALA, Officer WALTER LEWIS, Officer LAKESHA PALOMINO, Officer PERCY KIRKWOOD, Lt. SERGIO NAVARETTE, UVEEDA CADE, LPN, KIM BLACKSTON, RN, ANDREW CROWLEY, and COOK COUNTY, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Marilyn Johnson ("Plaintiff"), individually and as an administrator of Norman Johnson's ("Johnson") estate, brings a four-count complaint against Cook County and various individual defendants. Plaintiff brings a claim for a violation of Johnson's Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I), a Monell claim against Cook County Sheriff Thomas Dart (Count II), a Monell claim against Cook County (Count III), and a claim for indemnification (Count IV). Defendants Markitha Bolden, Kim Blackstone, Lakesha Palomino, Olufemi Ajala, Percy Kirkwood, Walter Lewis, Ventsislava Valchanski, Sergio Navarette, Andrew Crowley, Kenya Key, Sunita B. Williamson, and Cook County (the "Cook County defendants") have collectively moved for partial summary judgment. (Doc. 267). Defendant Uveeda Cade has filed a separate motion for summary judgment, (Doc. 261), and

plaintiff has cross-moved for summary judgment, (Doc. 265). For the reasons stated below, Defendant Cade's motion is denied, plaintiff's motion is denied, and the Cook County defendants' motion is granted in part and denied in part

## BACKGROUND

On January 3, 2014, Chicago police arrested Johnson and charged him with possession of 0.2 gram of crack cocaine—an amount worth roughly $10.00. Prior to his arrest, Johnson was participating in a methadone program and taking prescription Xanax. His last dose of methadone before his arrest was at 6:28 a.m. on January 3, 2014; it is unclear when he last took Xanax before his arrest. Johnson was unable to post the $10,000 bond and was transported to Cook County Jail for processing.

Shortly after midnight on January 5, 2014, Johnson began intake medical screening with three screeners: Kim Blackstone, a registered nurse; Andrew Crowley, a paramedic; and Dr. Sunita Williamson. Each spent a few minutes interviewing and examining Johnson. Johnson told each intake screener that he was taking methadone, which he had received daily for over nine years. He told the screeners that his last dose was two days earlier and that he was suffering from withdrawal symptoms such as nausea, vomiting, and diarrhea.[1] Kim Blackstone recorded Johnson's vitals and noted that Johnson's medications prior to arrest included Xanax, methadone, clonidine, and Flomax. Dr. Williamson completed the intake process, noting that Johnson had been taking Xanax and methadone, and prescribing several medications for withdrawal symptoms including nausea, vomiting, diarrhea, abdominal cramping, and anxiety on an as-needed basis.[2] There is no indication that Dr. Williamson prescribed Xanax. Dr.

---

[1] Defendants contest whether Johnson was experiencing or exhibiting withdrawal symptoms.
[2] Pharmacist Olufemi Ajala filled these prescriptions.

2

Williamson also recommended that Johnson be housed on a medical floor, so that his medical condition could be assessed every four hours.

At the time of Johnson's arrest, Cook County jail had a protocol for opioid dependent detainees who reported methadone dependence. When a newly admitted inmate informed the intake screeners that he was in an opioid treatment program, the intake screener would complete a blue methadone referral card and route it a pharmacy technician. The pharmacy staff would then contact the detainee's opioid treatment program to verify participation and dosage and, assuming the program verified the detainee's participation, he or she would be enrolled in the Substance Abuse and Methadone Management System. Medical providers in the jail would then begin safely tapering the detainee's methadone. Blackstone testified that she has no recollection of interacting with Johnson, but that it was her practice to fill out the methadone referral card. All parties agree that there is no methadone referral card in Johnson's medical file from Cook County jail, and that he never received methadone while at Cook County jail.

On January 5, 2014, at 6:33 a.m., Mental Health Specialist ("MHS") Ventsislava Valchanski conducted a mental health intake screening process for Johnson. Johnson told Valchanski that he had been hospitalized three times for psychiatric issues, he was seeing a psychiatrist, he had a history of recent mental health treatment, and he was currently suffering from symptoms related to depression and anxiety.[3] Johnson also told Valchanski "I need my meds," which Valchanski understood to mean his prescription for Xanax. Despite Johnson's history, Valchanski did not refer Johnson for immediate psychiatric evaluation, but rather classified Johnson as only in need of outpatient care. Valchanski then entered a "routine" order,

---

[3] Valchanski noted that Johnson reported depressive symptoms such as depressed mood, anhedonia, significant weight loss, insomnia, and inappropriate guilt.

3

referring Johnson to a psychiatrist within two weeks. That order was signed by Dr. Kenya Key, despite the fact that Dr. Key never met nor evaluated Johnson. Dr. Key testified that there was a practice of allowing her subordinates to sign her name, even without her knowledge, on psychiatry referral orders.

Despite Dr. Williamson's recommendation, Johnson was not assigned to a medical floor. According to fellow inmates, Johnson was bedridden 90% of the time, and the guards repeatedly ignored Johnson's pleas for medical assistance. After his intake screening, Johnson did not see any other doctors or psychiatrists. He only saw one nurse, Markitha Bolden, on January 6, 2014, where she recorded Johnson's vital signs without any further documentation regarding his visit. There is no dispute that Johnson was never prescribed or provided methadone or Xanax.

At approximately 10:10 a.m. on January 7, 2014, Officer Walter Lewis and Officer Lakisha Palomino found Johnson laying in a fetal position after another inmate called for help and claimed Johnson was having a seizure.[4] Officer Lewis turned Johnson to his side and when he was unable to find a pulse, he asked Officer Palomino to summon the nurse in the hallway. At no point did Officer Lewis initiate CPR, and several other inmates overhead Officer Lewis utter the racial epithet "n*****" and claim that he would give CPR only to women and children.

Nurse Cade, who was dispensing medications in the hallway, arrived a few minutes after Officer Lewis. She checked Johnson's pulse and then left to retrieve her stethoscope. It is unclear whether she detected a pulse, and Nurse Cade provides conflicting explanations on this

---

[4] It is unclear whether Johnson's episode can be described as a seizure; however, at the time of the emergency, all of the correctional officers and medical staff treated it as a seizure, and the court will use that term for simplicity.

point.[5] Plaintiff asserts that Nurse Cade did not initiate CPR, and did not stay at Johnson's side, but rather returned to dispensing medication in the hallway. At around 10:28 a.m., Officer Percy Kirkwood requested that Nurse Cade return to Johnson's dormitory. She returned, and then met the paramedics as they arrived. Nurse Cade advised the paramedics that there was an inmate on the second floor without a pulse.

Meanwhile, at 10:12 a.m., Officer Palomino informed her shift commander, Lieutenant Navarette, of the situation. Lieutenant Navarette had an automatic external defibrillator ("AED") in his office, and plaintiff claims that Lieutenant Navarette was responsible for bringing the AED in the event of an emergency. Instead of responding to the situation, Lieutenant Navarette stayed at his desk, continuing to do paperwork. Lieutenant Navarette did not approach Johnson's cell with the AED until he was summoned a second time, around 10:36 a.m.

There appears to be a dispute over the next several minutes. Plaintiff asserts that by the time Lieutenant Navarette arrived with the AED at 10:36 a.m., the paramedics were already on the scene and performing CPR. The Cook County defendants assert that Lieutenant Navarette arrived on the scene at 10:36 a.m., Nurse Cade advised Lieutenant Navarette to call 911, and that the paramedics arrived at approximately 10:46 a.m. Regardless, when the paramedics arrived, they determined that Johnson had no pulse, no respiration, no blood pressure, and that no one had yet administered CPR. The paramedics then began administering CPR.

At 11:21 a.m., Johnson arrived at St. Anthony Hospital. He was declared dead on arrival. The medical examiner conducted an examination and issued a report, concluding that

---

[5] Immediately after Johnson's death, Nurse Cade informed the Sheriff's investigator that she had found Johnson without a pulse, but she noted in Johnson's medical chart that she found Johnson "with even respirations and bilateral pulses palpable." Ten days later, Nurse Cade told the Root Cause Analysis Committee that she found Johnson "sleeping after a seizure," and in her deposition two years later, she stated that she found Johnson "stable."

5

Johnson's cause of death was methadone toxicity with pulmonary congestion, cardiomegaly, and coronary artery occlusions. The medical examiner's report listed plaintiff's decedent's methadone level at 0.74, which the examiner determined was a lethal level of toxicity. Plaintiff disputes that methadone toxicity caused Johnson's death.

## DISCUSSION

Summary judgement is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. Hutchinson v. Fitzgerald Equip. Co., Inc., 910 F.3d 1016, 1021 (7th Cir. 2018). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are the jobs for a factfinder." Johnson v. Advocate Health and Hospitals Corp., 982 F.3d 887, 893 (7th Cir. 2018).

### I.  Local Rule 56.1

As a preliminary matter, the Cook County defendants argue that plaintiff's summary judgment pleadings violate Local Rule 56.1. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." Flint v. City of Belvidere, 791 F.3d 764, 767 (7th Cir. 2015). The Cook County defendants claim that certain paragraphs are too long, and seek to strike certain facts where plaintiff's citations to the record

6

do not support the stated fact. The court declines to strike the paragraphs with inaccurate or incomplete citations. However, the court will consider only factual matter that is supported by the record.

The Cook County defendants next seek to strike Exhibit 12 and Exhibit 15. Exhibit 12 is a "Capital Project Request Form by Dr. John Raba of June 10, 2004." Exhibit 15 is a declaration by Bryan House, a detainee in Johnson's dormitory, that describes the events on January 7, 2014, and statements made by Officer Lewis. The Cook County defendants claim that both exhibits were not disclosed during discovery, and that both are hearsay documents. For Exhibit 15, the defendants take particular issue with Bryan House's recitation of statements made by Officer Lewis.

Although both of these exhibits should have been disclosed during discovery, the court declines to strike them on that basis. Due to the COVID-19 emergency, and the backlog of cases awaiting trial, the trial date for this case is many months (if not years) away. Given this extended timeframe, the court grants leave for defendants to depose and otherwise cross-examine Bryan House. Regarding the hearsay objections, neither exhibit constitutes inadmissible hearsay. The statements by Officer Lewis contained in Exhibit 15 are clearly statements by an opposing party, and are therefore not hearsay. Fed. R. Evid. 801(d)(2). And the Capital Project Request Form is a business record. Fed. R. Evid. 803(b). The court declines to strike either exhibit.

## II. Deliberate Indifference (Count I)

Both plaintiff and defendants move for summary judgment on Count I, plaintiff's claim of inadequate medical care under the Fourteenth Amendment.[6] Plaintiff separates his Fourteenth Amendment claim into two incidents: (1) the intake screening process that failed to provide methadone and Xanax to Johnson; and (2) the morning of January 7, 2014, where the delay in CPR and appropriate emergency care contributed to his death.

Treatment of pretrial detainees like Johnson is governed by the Fourteenth Amendment. See Miranda v. Cnty. of Lake, 900 F.3d 335, 352-54 (7th Cir. 2018); Collins v. Al-Shami, 851 F.3d 727, 731 (7th Cir. 2017). For a plaintiff to survive summary judgment, a reasonable jury must be able to conclude that: (1) defendants recklessly disregarded the consequences of failing to act; and (2) the failure to act was objectively unreasonable. Miranda, 900 F.3d at 352-54 (citing Kingsley v. Hendrickson, 135 S.Ct. 2446, 2472-75 (2015)). For claims predicated on a delay of care, a plaintiff has to present "verifying medical evidence that the delay in medical care caused some degree of harm." Miranda, 900 F.3d at 347. The plaintiff does not "bear the burden of proving that but for the medical defendants' inaction, [the plaintiff] would definitely have lived. It would have been enough for [the plaintiff] to show that the resulting harm was a diminished chance of survival." Id.

Plaintiffs bring Count I against several individuals. The court shall address each in turn.

---

[6] Plaintiff's complaint asserts "deliberate indifference," but the applicable standard for medical care claims brought under the Fourteenth Amendment by pretrial detainees is objective unreasonableness. See Miranda v. Cnty. of Lake, 900 F.3d 335 (7th Cir. 2018).

### a. Intake screeners

Upon entering Cook County Jail, Johnson encountered a handful of intake screeners: Dr. Williamson, paramedic Crowley, Nurse Blackstone, Pharmacist Ajala, MHS Valchanski, and Dr. Key. For Dr. Williamson, paramedic Crowley, and Nurse Blackstone, there is a genuine issue of fact as to whether they recklessly disregarded Johnson's medical need and whether their failure to provide the requisite medications and methadone referral card is objectively unreasonable. The record indicates that Johnson was clear about his medications prior to arrest, including methadone and Xanax, and was exhibiting symptoms of methadone withdrawal (as further indicated by Dr. Williamson prescribing medications for methadone withdrawal symptoms). Yet the record is not so clear as to justify summary judgment in favor of either party. For example, although Dr. Williamson and paramedic Crowley conceded that they did not fill out a methadone referral card, Nurse Blackstone insists that she must have done so despite having no recollection of treating Johnson and the lack of a card in Johnson's file. There further appears to be a dispute regarding Johnson's symptoms at intake screening. Based on these issues of fact, the court denies both plaintiff's and defendants' motion for summary judgment as to Dr. Williamson, Nurse Blackstone, and paramedic Crowley.

The same conclusion follows for Dr. Key and MHS Valchanski. There are multiple issues of fact as to whether their failure to promptly refer to Johnson to a psychiatrist and provide medications was objectively unreasonable, given his desperate plea for his medication and his clear symptoms of mental health distress. Further, a reasonable jury could conclude that Dr. Key's practice of having subordinates sign her name and delaying an appointment—without

9

bothering to interact with the detainee or review his medical records—is objectively unreasonable. For these reasons, summary judgment is inappropriate.

However, no reasonable jury could conclude that Pharmacist Ajala acted unreasonably or with reckless disregard. Pharmacist Ajala correctly filled plaintiff's prescriptions, which were prescribed on an as needed basis. Yet plaintiff faults Ajala for failing to realize that Johnson needed a methadone referral card. More specifically, plaintiff alleges that Pharmacist Ajala "received prescriptions for [Johnson] that had historically been used at Cook County Jail to relieve some of the symptoms of Methadone withdrawal…, and, therefore, Pharmacist Ajala knew or should have known that [Johnson] was both Methadone dependent and participating in a community Methadone treatment program." Plaintiff further faults Ajala for failing to question the absence of a methadone referral card. As defendants note, this argument rests on the "questionable premise that a pharmacist should countermand or overrule a physician's order." More fundamentally, there is no evidence that Ajala was responsible for determining the compatibility of medications or questioning why medications were not prescribed. The completion of a methadone referral card was also not one of Ajala's responsibilities. No reasonable jury could find Ajala's conduct objectively unreasonable. Summary judgment is granted for Pharmacist Ajala.

### b. Nurse Bolden

Nurse Bolden was the only medical professional to see Johnson between the initial intake screening and the medical emergency preceding his death. The record indicates that the day before his death, Johnson went to the infirmary.[7] Nurse Bolden documented plaintiff's vital

---

[7] Only one document, the Root Cause Analysis, suggests that Johnson went to the infirmary to inquire about his methadone. There is no other evidence regarding Johnson's reason for the infirmary visit, and Cook County staff

signs, which appeared normal. There is no other evidence or testimony regarding Nurse Bolden's care, yet plaintiff faults Nurse Bolden for only taking Johnson's vital signs. There is no evidence or testimony from which a reasonable jury could conclude that this care was constitutionally deficient. There is no indication that Johnson appeared to be in medical distress, or that Nurse Bolden's conduct was objectively unreasonable. The court grants summary judgment for Nurse Bolden.

### c. Officer Palomino

The record indicates that, on January 7, 2014, Officer Palomino took over as the lunch relief officer for the dormitory that housed Johnson. There is some dispute as to whether Officer Palomino should have been wandering the hallways of the dormitory or staying on desk duty. Around 10:10 a.m., another officer notified Palomino that Johnson was having a medical episode, and Palomino notified Nurse Cade and Lieutenant Navarette. At some point, Officer Palomino entered Johnson's dormitory. Plaintiff's arguments regarding Officer Palomino are unclear, but the most the court can discern is that Plaintiff faults Palomino for momentarily stepping away from her post.

Based on the record before the court, no reasonable jury could find that Officer Palomino acted with reckless disregard for Johnson's medical needs, or acted unreasonably. The court grants summary judgment in favor of Officer Palomino.

---

could not verify the statement in the Root Cause Analysis. Nurse Bolden testified that she could not remember the reason for Johnson's visit, but that she would have recorded it on his medical chart. Johnson's chart has no reason listed.

### d. Lieutenant Navarette

On January 7, 2014, Lieutenant Navarette was the shift commander on duty. Plaintiff claims that as the shift commander, Lieutenant Navarette was responsible for bringing the only AED to the scene of a medical emergency. Although Officer Palomino informed Lieutenant Navarette of a medical emergency at 10:12 a.m., Lieutenant Navarette did not approach Johnson with the AED, but continued for 20 minutes to do paperwork at his desk. The Cook County defendants assert that this decision was reasonable because Officer Palomino informed Lieutenant Navarette that an inmate was having a seizure, and seizures were not considered a severe medical emergency warranting Lieutenant Navarette's attention. Plaintiff contests that assertion. At 10:35 a.m., an officer again notified Lieutenant Navarette of a medical emergency, and Lieutenant Navarette proceeded to Johnson's dormitory. The parties dispute whether paramedics had already arrived at the scene, or whether Lieutenant Navarette called 911.

Based on these facts, neither party is entitled to summary judgment. A reasonable jury could find that Lieutenant Navarette acted with reckless disregard and objectively unreasonably when he delayed investigating a medical emergency and instead continued doing paperwork, and when he delayed bringing the only AED to the scene of a medical emergency and delayed contacting 911. Given the disputed issues over when the paramedics arrived, what Officer Palomino communicated to Lieutenant Navarette at 10:12 a.m., and whether Johnson had a pulse or was otherwise in need of an AED before Lieutenant Navarette's arrival, the court declines to grant summary judgment to either party.

e. **Officer Lewis**

Officer Lewis was the first officer to arrive on the scene on January 7, 2014. It is clear that upon arrival, Johnson was in medical distress and that Officer Lewis recognized the emergency. Officer Lewis testified that he did not believe CPR was necessary because Johnson no longer had a pulse, and that he believed an AED would have been more helpful. There are, however, genuine disputes of fact regarding whether Johnson had a pulse, and whether Johnson required CPR. The record shows that although Officer Lewis received annual CPR training and was with Johnson for nearly 26 minutes, Officer Lewis did not initiate CPR at any point. Plaintiff has presented a declaration from Johnson's cellmate, Bryan House, and deposition testimony from another inmate, Joe Lee, that Officer Lewis made statements such as referring to Johnson as a "n*****," and claiming that he performed CPR only on women and children.

Based on this record, there is a genuine dispute as to whether Officer Lewis acted with reckless disregard and whether his conduct was objectively unreasonable. Neither party is entitled to summary judgment.

f. **Nurse Cade**

Nurse Cade brings a separate motion for summary judgment. She argues that her conduct was reasonable and that she is entitled to qualified immunity. On Nurse Cade's telling, she promptly assisted Johnson, checked his pulse and respirations (which were normal), requested backup from another officer, and then returned and administered CPR to Johnson. Plaintiff notes that Nurse Cade has presented several different and conflicting explanations as to whether she found Johnson with a pulse and respirations, and argues that the evidence demonstrates that Johnson was without a pulse and required CPR immediately. Plaintiff further

13

argues that Nurse Cade's twenty-minute delay in initiating CPR, and her "blithe return to distributing medication" while plaintiff was having a medical emergency, was objectively unreasonable and demonstrate reckless disregard. Again, given the myriad issues of fact that permeate this case, summary judgment is not appropriate for either party.

As for Nurse Cade's qualified immunity argument, the court conducts a two-part test to determine: (1) whether there was a constitutional violation; and (2) if so, whether the constitutional standards were clearly established at the time of the violation. See Dockery v. Blackburn, 911 F.3d 458, 466 (7th Cir. 2019). Nurse Cade makes arguments only about the first prong—whether there was a constitutional violation. She makes no arguments regarding the second prong and what was clearly established. The court has already evaluated the first step of the analysis and concluded that there is a genuine issue of material fact as to whether Nurse Cade violated Johnson's constitutional rights by delaying medical care. Consequently, Nurse Cade's motion for summary judgment is denied.

### g. Officer Kirkwood

Neither party moves for summary judgment for Officer Kirkwood. However, on the court's own review of the record, summary judgment is appropriate. The only facts involving Officer Kirkwood show that he was assigned to Johnson's dorm, he stayed with plaintiff while waiting for the paramedics to arrive, and he requested that Nurse Cade return to Johnson at around 10:28 a.m. There are no other facts regarding Officer Kirkwood, and, based on this record, no reasonable jury could conclude that Officer Kirkwood acted unreasonably or with reckless disregard. The court grants summary judgment for Officer Kirkwood.

### III. Monell claims (Count II and Count III)

To establish a Monell[8] claim, a plaintiff must show that he or she suffered a deprivation of a constitutional right proximately caused by either: (1) an express municipal policy; (2) a widespread common practice that by virtue of its ubiquity constitutes a de facto custom or usage with the force of law; or (3) a deliberate act of a decision-maker with final policy-making authority. See Rossi v. City of Chi., 790 F.3d 729, 737 (7th Cir. 2015). Here, plaintiff brings a Monell claim against Cook County Sheriff Thomas Dart (Count II) and Cook County (Count III) for "failure to implement an adequate policy for continuation of a community methadone program," and for failing to train employees with respect to that program.

No reasonable jury could find for plaintiff on either Monell claim. To the extent plaintiff asserts a claim based on an express policy, summary judgment is warranted for both Cook County and Sheriff Dart. Cook County has an express policy (the Methadone Maintenance Policy) that governs the very issue about which plaintiff complains. Plaintiff has not offered any evidence or testimony to suggest that this policy is constitutionally deficient. At most, plaintiff's expert Dr. Madill has testified that Cook County's Methadone Maintenance Policy was deficient because Johnson "didn't get his methadone in a timely fashion." But a single instance in which the policy failed to procure the intended result does not suggest that the policy itself is constitutionally deficient. There is similarly no evidence or testimony from which a jury could infer that Cook County employees were improperly trained.

Plaintiff has further failed to present evidence that Cook County and Sheriff Dart had a custom or practice of failing to timely provide methadone treatment to pretrial detainees.

---

[8] Monell v. Dept. of Soc. Svcs., 436 U.S. 658 (1978).

Plaintiff relies on a 2008 Department of Justice Report as evidence of a systemic problem with the Cook County Jail healthcare system. However, after that report, Cook County implemented new policies, including the Methadone Maintenance Policy discussed above. There is no evidence that the criticism in the 2008 Department of Justice Report are still relevant today.

Plaintiff has additionally presented no evidence of other detainees who did not receive timely methadone treatment that would establish a widespread practice. At the summary judgment stage, plaintiffs cannot rely on a single instance to demonstrate a custom or practice. See Grieveson v. Anderson, 538 F.3d 763, 774 (7th Cir. 2008) (four alleged instances did not establish a widespread practice); Estate of Moreland v. Dieter, 395 F.3d 747, 760 (7th Cir. 2005). Here, plaintiff has no evidence of other instances, let alone multiple prior instances.[9] Indeed, plaintiff's expert, Dr. Madhill, testified that he was not aware of any other Cook County Jail detainees who did not receive their methadone in a timely manner. At most, plaintiff has demonstrated a single, albeit serious, mishap. No reasonable jury could find a pattern or practice here.

For these reasons, the court grants Sheriff Dart and Cook County's motion for summary judgment on Count II and Count III, respectively.

## CONCLUSION

For these reasons, defendant Cade's motion (Doc. 261) is denied, plaintiff's motion (Doc. 265) is denied, and the Cook County defendants' motion (Doc.267) is granted in part and denied

---

[9] Plaintiff argues that five Cook County employees could have caught the error and provided defendant with methadone, and the failure of those five employees to act demonstrates a widespread practice. See (Doc. 248, p. 12) ("For so many employees in so many different capacities to fail to notice that Norman Johnson had not received [a methadone referral card], there had to be either a gap in the express policy or a failure to train on the policy, or both."). Yet this failure stems from a single instance, and cannot be considered multiple instances sufficient to establish a Monell claim.

in part. Summary judgment is granted in favor of Nurse Bolden, Pharmacist Ajala, Officer Kirkwood, and Officer Palomino for Count I, and in favor of defendants on Counts II and III.

Due to the ongoing COVID-19 pandemic, and the consequent backlog of criminal and civil cases, the court is unable to set a trial date in this case at this time. The parties are directed to file a final pretrial order using this court's form on or before March 1, 2022. Answers to any motions in limine are to be filed on or before March 18, 2022. The court will set a pretrial conference after review of these filings.

**ENTER:**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**

**DATE:** November 2, 2021